UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT CARTER,

    *Plaintiff,*

v.

JASON QUAINTON,
BRIAN ENRICI,
TIMOTHY S. FLANAGAN,
and SONIA WARCHOCK,

    *Defendants.*
_____/

CASE NO. 2:22-cv-12750

HON. SEAN F. COX
DISTRICT JUDGE

HON. PATRICIA T. MORRIS
MAGISTRATE JUDGE

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION (ECF No. 1)**

### I.  **RECOMMENDATION**

For the reasons set forth below, **I RECOMMEND** that pursuant to 28 U.S.C. § 1915(e)(2), the Court *sua sponte* **DISMISS** Plaintiff's complaint **IN PART**. If the Report is adopted, the Court would dismiss Plaintiff's Fourth Cause of Action (Fourteenth Amendment Equal Protection claim) and Sixth Cause of Action (state Intentional Infliction of Emotional Distress claim). Thus, Plaintiff's first, second, third and fifth causes of action would be permitted to proceed.

## II. REPORT

### A. Background

Carter is a former MDOC inmate who was previously housed at the Parnall Correctional Facility ("PCF"). (ECF No. 1, PageID.3). He commenced the instant action on November 14, 2022 based on incidents which occurred while he was serving his time at PCF. (ECF No. 1). Shortly after, he participated in a mediation which was ultimately unsuccessful.

Carter's recitation of the acts begins in March 2020, when he was given notice of "the things that could be discussed during the parole board interview." (*Id.* at PageID.4). In May 2020, Defendant Enrici informed Carter his cell was going to be searched, explaining that because Plaintiff seemed to frequently be with prisoners who are known gang members, he must be one also. (*Id.*) After Carter protested and words were bandied about, Carter threatened to file a grievance, and Defendant Enrici told him they'd "see what the parole board has to say about that." (*Id.* at PageID.4–5). In September 2020, Plaintiff was interviewed by Defendant Flanagan (parole board member) with Defendant Quainton present, they discussed Carter's prior and present convictions and Plaintiff felt the interview went well. (*Id.* at PageID.5). Later that afternoon, Carter was approached by a fellow inmate who informed Carter that he overheard Defendant Quainton telling Defendant Flanagan that Carter had a prisoner assaulted and played a major role in illegal drugs coming into the facility. (*Id.* at PageID.5–6). Carter asked the other inmate if they were really talking about him and

2

the inmate told Carter he heard them mention his name. (*Id.* at PageID.6). Carter contends that because of this false information, he was denied parole and placed in an "intense VVP-Moderate violence program[.]" (*Id.*)

Carter approached Defendant Enrici to complain about the false rumors being spread about him and Defendant Enrici told Carter that everyone knows he is in a gang, the head of the GDs [Gangster Disciple] and was behind prisoner Moore being assaulted. (*Id.*) Carter denied these allegations. (*Id.*) Carter then approached Defendant Quainton and asked him whether he had stated any of these rumors to the parole board and Defendant Quainton said he had not told the parole board but that the staff knew the rumors to be true. (*Id.* at PageID.7). Defendant Quainton also said Defendant Enrici had investigated him, along with others, so they all knew. (*Id.*) After Carter threatened Defendant Quainton with filing lawsuits against the individuals spreading false allegations regarding his involvement with GD, Carter received class II and III misconduct tickets which Defendant Quainton explained were written because Defendant Enrici had been given carte blanche to "write tickets on [Carter] and other guys he deems are in a gang." (*Id.* at PageID.7–8).

Following this discussion, Carter reviewed his parole documents, identified errors, and contacted the parole board to request a rehearing or reconsideration. (*Id.* at PageID.8). Later that month, Plaintiff wrote a kite to the prison inspector, who spoke with Defendant Enrici. (*Id.* at PageID.8–9). The prison inspector then followed up with Carter and informed him that he should not worry because he was not on Defendant

Enrici's "radar." (*Id.* at PageID.9). A few weeks later, Carter received a response to his letter to the parole board. (*Id.* at PageID.8). The parole board corrected some errors and filed an amended version of the decision but upheld the original decision. (*Id.*)

In June 2021, another prisoner told Carter that Defendant Enrici said he was a gang member which is what prompted Defendant Enrici to search Carter's cell. (*Id.* at PageID.9). Carter complained to Tylutki, the Resident Unit Manager, and was assured that Defendant Quainton would not be present at Carter's next parole board hearing, because she, Tylutki, would be there instead. (*Id.*) In July, Carter was given notice of the parole board interview and the factors the board would consider. (*Id.* at PageID.9–10). When Carter reviewed the score sheet, he noticed it contained serious errors, and in August 2021, wrote a letter to the parole board requesting for corrections to be made. (*Id.* at PageID.10). During the same month, Defendant Enrici proceeded to file six class II misconducts against Carter. (*Id.*) At the hearing for the misconducts, Lieutenant Robinson threatened increased penalties for Carter accusing the officers of lying. (*Id.*)

In September 2021, Carter participated in his parole interview during which Defendant Flanagan asked about things he had heard from prison officials (i.e., that Carter was in a gang). (*Id.* at PageID.11). Carter reiterated that he is not in a gang and that he does not "select only gang members to associate with." (*Id.*) Flanagan replied that "from what they say, [Carter] is the head of the GDs" and remains at level one security only because he has others do his "dirty work" for him. (*Id.*) Plaintiff denied these allegations. (*Id.*) Despite prison policy directive 06.05.104(Q) and Mich. Comp.

Laws section 791.235(4) requiring prisoners to be given notice of the specifics that will be discussed at the parole interview, Carter alleges that he was never informed that the gang member allegations would be discussed. (*Id.* at PageID.13).

Based on the above facts, Carter makes six legal claims. (*Id.* at PageID.14). All six legal claims are lodged against Defendants Quainton, Enrici, Flanagan, and Warchock. His first cause of action is against Defendants for "their retaliating against Plaintiff for his threat to advance oral or written complaints[.]" (*Id.*). Carter's second cause of action is for Defendants " conspiring to deprive Plaintiff of federal rights[.]" (*Id.*) Carter's third cause of action is for Defendants "depriving Plaintiff of his Due Process rights to adequate notice[.]" (*Id.*) His fourth cause of action is filed against Defendants for "their discrimination towards Plaintiff in presenting fabricated information to the parole board[.]" (*Id.* at PageID.14–15.) Plaintiff's fifth cause of action is against the same Defendants for the state claim of negligence/gross negligence and his sixth cause of action is against the same Defendants for the state claim of intentional infliction of emotional distress. (ECF No. 1, PageID.15.)

### B. Legal Standard

Carter proceeds *in forma pauperis* ("IFP"), subjecting his claim to the screening standards in 28 U.S.C. § 1915(e)(2)(B) (2012). Since 1892, federal courts have possessed statutory power to permit civil actions *in forma pauperis*. *See Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016). This power ensures that indigent individuals have

equal access to the judicial system by allowing them to proceed without advancing the litigation fees and costs. *Flint v. Haynes*, 651 F.2d 970, 972 (4th Cir. 1981).

However, Congress recognized that "a litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). To counteract these incentives, Congress crafted a screening procedure that requires the court to *sua sponte* review the complaints of all plaintiffs proceeding IFP and dismiss any before service of process if it determines that the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B).

When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

When considering whether a complaint states a claim, "[t]he courts must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). Still, the plaintiff must plead "enough facts

6

to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The complaint must include more than "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action." *Id.*

As noted, the IFP statute also requires federal courts to screen frivolous claims. The Supreme Court has established that "a complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke*, 490 U.S. at 325 (1989). A complaint is also frivolous and can be dismissed if it provides no basis for federal jurisdiction. *Carlock v. Williams*, 182 F.3d 916, 1999 WL 454880, at *2 (6th Cir. 1999) ("Since there is no basis for federal jurisdiction apparent on the face of Carlock's complaint . . . the district court properly dismissed the action as frivolous and for lack of subject matter jurisdiction."); *Humphries v. Various Fed. USINS Employees*, 164 F.3d 936, 941 (5th Cir. 1999) (citing caselaw for the proposition that a complaint is frivolous and can be dismissed on screening if the subject matter is outside the court's jurisdiction); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

To state a claim under § 1983, a plaintiff must allege facts showing (1) the conduct about which he complains was committed by a person acting under color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. In addition, a

7

plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976). A plaintiff must make a clear showing that each named defendant was personally involved in the activity that forms the basis of the complaint. *Id*. at 375–76; *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

### C. Analysis

#### 1. Plaintiff Fails to State a Claim Upon Which Relief May Be Granted for His Fourteenth Amendment Class-of-One Equal Protection Cause of Action (Fourth Cause of Action)

Prisoners are entitled to equal protection under the law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The linchpin of an equal protection claim is that the government has intentionally treated people who are similarly situated in a different manner without a rational basis for the disparate treatment. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Ross v. Duggan*, 402 F.3d 575, 587–88 (6th Cir. 2004). Importantly, in "class-of-one" claims, the plaintiff does not allege membership in a class or group but instead "alleges that [he] has been intentionally treated differently from others similarly situated [to him] and that there is no rational basis for the difference in treatment." *See id.*; *see also Anthony v. Weidman*, No. 07-CV-10467, 2007 WL 2080303, at *1 (E.D. Mich. July 18, 2007).

Carter's equal protection class-of-one claim is supported by the (i) allegation that "Defendants' Quainton, Enrici, Flanagan, and Warchock actions [sic] violated Federal

law, [and] their discrimination towards Plaintiff in presenting fabricated information to the parole board, as set forth in this complaint" and (ii) allegations concerning the retaliation effectuated against him. (ECF No. 1). There is no mention in the complaint as to whether there are other similarly situated individuals (e.g., other inmates who Defendant Enrici untruthfully alleged to be gang members). If such similarly situated individuals do exist, Carter's claim still fails because there is no allegation discussing how they were being treated (e.g., were they given parole despite Defendant Enrici's untruthful allegations). Thus, the allegations contained in the complaint are insufficient to support Carter's claim that he was treated differently from similarly situated individuals. *JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905, 937 (W.D. Mich. 2009) (finding that plaintiff failed to state a claim under the class-of-one theory because it had "not identified similarly-situated entities that were treated more favorably."); *Tri-Corp Mgmt. Co. v. Praznik*, 33 F. App'x 742, 746–47 (6th Cir. Mar. 29, 2002) (ruling plaintiff's complaint failed to state an equal protection claim because plaintiff did "not make any allegations with respect to similarly situated persons"); *see Akrawi v. Michigan Parole Bd.*, No. 12-cv-13977, 2012 WL 4476633, at *2 (E.D. Mich. Sept. 28, 2012) (finding plaintiff failed to "allege any facts to establish whether he received disparate treatment at the hands of the parole board as compared to similarly situated prisoners"); *see Peterson v. Cty. of Monroe*, No. 14-CV-12853, 2015 WL 1439882, at **2, 3 (E.D. Mich. Mar. 27, 2015). Without a suggestion that other inmates were granted parole although Defendant Enrici untruthfully accused them of being gang

members, Carter failed to make out a class-of-one equal protection claim. *Clark v. Johnston*, 413 F. App'x 804, 817–18 (6th Cir. Jan. 25, 2011) (ruling that plaintiff did not adequately plead an equal-protection violation under a class-of-one theory as his complaint did not "state any facts that could be used to infer an allegation that similarly situated prisoners were treated more favorably than [plaintiff]").

Although based on the discussion above, it is not necessary to discuss the rationale basis element of a class-of-one claim, it is worth noting that Carter also fails to indicate in his complaint that there was no rational basis for the Defendants' actions. *See Olech*, 528 U.S. at 564. Thus, I find that Carter fails to state a class-of-one equal protection claim. *Van Haynes v. Michigan Dep't of Corr.*, No. 20-13432, 2021 WL 3231736, at *4–5 (E.D. Mich. July 29, 2021). Accordingly, **I RECOMMEND** Carter's Fourteenth Amendment Equal Protection (Fourth Cause of Action) claim be **DISMISSED**.

### 2. Plaintiff Fails to Allege Sufficient Facts to Support His Intentional Infliction of Emotional Distress State Claim (Sixth Cause of Action)

To establish an IIED claim under Michigan law, a plaintiff must allege the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Ahmed v. Waterman S.S. Corp.*, 382 F. Supp. 2d 923, 927 (E.D. Mich. Aug. 10, 2005) (collecting cases); *Hayley v. Allstate Ins. Co.*, 262 Mich. App. 571, 577 (2004) (quotation marks and citation omitted). Carter's allegations fall short of the high threshold required to support this claim for two reasons.

10

First, Carter fails to plead sufficient facts to state an IIED claim. The allegations outlined in the complaint, even interrupted liberally, fall far short of what would be categorized as "extreme and outrageous conduct." For a party to be held liable under this standard, the conduct complained of must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Smith v. Davidson*, No. 10-13898, 2013 WL 1319523, at *4 (E.D. Mich. Mar. 6, 2013). While the Defendants' actions of lying about Carter's gang membership status, which served as a basis for conducting unnecessary searches, denying parole, and requiring participation in additional violence prevention programs, may have been inappropriate, and even reprehensible, the actions did not go "beyond all possible bounds of decency" such that they would "be regarded as atrocious, and utterly intolerable in a civilized community." *Id.; Sperle v. Michigan Dept. of Corr.*, 297 F.3d 483, 496 (6th Cir. 2002); *see Sykes v. Bank of Am. Corp.*, No. 13-CV-12087, 2014 WL 4681608, at *7 (E.D. Mich. Sept. 19, 2014) (collecting cases).

Second, while Carter has alleged frustration from experiencing this injustice, his complaint is silent as to the "severe emotional distress" he experienced. *See Smith v. Bank of Am., N.A.*, No. 1:11-CV-866, 2012 WL 1657349, at *5 (W.D. Mich. May 10, 2012) (dismissing IIED claim "because it merely states the elements of an IIED claim couched in factual conclusory statements."); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

11

statements, do not suffice."). Accordingly, **I RECOMMEND** Carter's IIED state claim (Sixth Cause of Action) be **DISMISSED**.

### D. Conclusion

For the reasons set forth above, **I RECOMMEND** that this Court *sua sponte* **DISMISS** Plaintiff's complaint **IN PART**, by **DISMISSING** Plaintiff's Fourteenth Amendment Equal Protection claim (Fourth Cause of Action) and Intentional Infliction of Emotional Distress state claim (Sixth Cause of Action). Thus, Plaintiff's remaining claims, his First, Second, Third, and Fifth causes of action, should be permitted to proceed.

## III. REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1.) Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981.) The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*,

829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d.) The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: June 14, 2023                                s/ PATRICIA T. MORRIS
                                                   Patricia T. Morris
                                                   United States Magistrate Judge